30144/aip

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| MIDWEST CUSTOM CASE, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 08 CV 844 |
| | ) | |
| ADVANCED RECYCLING EQUIPMENT, INC. | ) | Honorable Charles R. Norgle, Sr. |
| | ) | Magistrate Judge Cole |
| | ) | |
| Defendant. | ) | |

### PLAINTIFF/COUNTER-DEFENDANT'S ANSWER AND SPECIAL DEFENSES TO COUNTERCLAIM

The plaintiff/counter-defendant, MIDWEST CUSTOM CASE, INC., by its attorneys, THE HUNT LAW GROUP, LLC, as for its Answer and Special Defenses to Defendant/Counter-plaintiff's Counterclaim, states as follows:

### Parties

1.  Advanced Recycling Equipment, Inc. ("ARE") is incorporated under the laws of the State of Pennsylvania, and has its principal place of business in St. Marys', Pennsylvania.

ANSWER:   Upon information and belief, plaintiff/counter-defendant admits the allegations contained in paragraph 1.

2.  On information and belief, Midwest Custom Case, Inc. ("Midwest") is incorporated under the laws of the State of Illinois, and has its principal place of business in University Park, Illinois.

ANSWER:   Plaintiff/counter-defendant admits the allegations contained in paragraph 2.

### Jurisdiction and Venue

3.    This Court has jurisdiction pursuant to 28 U.S.C. §1332(a)(1), in that there is complete diversity between Plaintiff-counterdefendant Midwest and Defendant-counterplaintiff ARE, and the amount in controversy exceeds $75,000.00. In addition, this Court has pendant [sic] and/or ancillary jurisdiction over these Counterclaims, as they arise from the same transaction as Plaintiff-counterdefendant's claims. Venue is proper under 28 U.S.C. §1301 and 28 U.S.C. §1391, in that the Plaintiff-counterdefendant resides in this district and a substantial part of the events and transactions giving rise to the claim occurred in this judicial district.

ANSWER:    Plaintiff/counter-defendant admits the allegations contained in paragraph 3.

### Facts

4.    On or about February 7, 2007, ARE and Midwest entered into a certain contract (the "Contract") which provided, <u>inter alia</u>, that ARE would sell certain goods, and provide certain services, to Midwest, in return for certain payments by Midwest, as follows (and as set forth more fully in the Contract):

> Challenger CCU405-A "Warm Air" Combustion Unit including Heat Exchanger, Ash Removal System, Standard Controls and Single Skin Chimney (24' long) (collectively, the "Challenger Unit"): $176,351.00
>
> Optional Equipment:
> Double Damper Assembly w/ Motorized Control: $4,798.00
> Assembly/Installation of all equipment Supplied by A.R.E.: $10,000.00
> Shipping: $4,095.00
> Auto De-Ash w/ Controls & Bin: $11,625.00
> 50 Cubic Yard Live Bottom Storage including Transfer Auger: $56,200.00
> * Start-up, Commissioning and Training are included in this package

See Contract, a true and correct copy of which is attached hereto as Exhibit A and incorporated herein by reference.

ANSWER:   Plaintiff/counter-defendant admits the allegations contained in paragraph 4.

5.   The Contract expressly provided that certain items were excluded from the scope of the Contract, including, inter alia, construction of a building to house the Challenger Unit and Optional Equipment and electrical service necessary to operate the Challenger Unit and Optional Equipment, as follows:

> **The following scope of supply is excluded from this proposal:**
>
> \*   Building as required and site preparations required for installation, including all foundation work, electrical, plumbing, etc.

See Exhibit A, Contract at 3.

ANSWER:   Plaintiff/counter-defendant admits that this language is contained in the Contract and denies the remaining allegations contained in paragraph 5.

6.   The Contract set forth certain terms and conditions of the sale, including, inter alia, the following:

> Title to the property furnished by Advanced Recycling Equipment is retained until paid in full.\*\*\*  This agreement shall be construed under the laws of the Commonwealth of Pennsylvania.  Signing this contract verifies that you agree to the Terms and Conditions of Sale in the attached Appendix A.

See Exhibit A, Contract at 3.

ANSWER:   Plaintiff/counter-defendant admits that this language is contained in the Contract and denies the remaining allegations contained in paragraph 6..

7.   The Contract set forth the applicable freight arrangements, as follows:

All equipment sales will be **FOB University Park, IL.** (emphasis in original)

See Exhibit A, Contract at 3.

3

ANSWER:   Plaintiff/counter-defendant admits that this language is contained in the Contract.

8. The Contract set forth certain terms, as follows:

> 50% Due with Purchase, Balance Due upon equipment arrival to University Park, IL and verbal approval of customer to Balboa Capital. Upon customer request Advanced Recycling Equipment will have two service technicians on site for off loading and setting of all equipment as it arrives. Advanced Recycling Equipment, Inc. agrees that installation including start-up and commissioning of the system will be provided in a timely manner.

See Exhibit A, Contract at 4.

ANSWER:   Plaintiff/counter-defendant admits that this language is contained in the Contract.

9. Appendix A set forth certain additional terms and conditions of the sale, including, inter alia, with respect to title and insurance, as follows:

> **TITLE AND INSURANCE** – Title to the product(s) and risk of loss or damage shall pass to Purchaser at the f.o.b. point, except that a security interest in the product(s) and proceeds and any replacement shall remain in Company, regardless of the mode of attachment to realty or other property, until the full price has been paid in cash.

See Exhibit A, Contract at 4.

ANSWER:   Plaintiff/counter-defendant admits that this language is contained in the Contract.

10. Appendix A set forth certain additional terms and conditions of the sale, including, inter alia, with respect to attorneys' fees and costs, as follows:

> In the event Company places this agreement in the hands of an attorney for collection of the purchase price or other sums owing to Company from Purchaser or whoever holds title to equipment purchased, Purchaser agrees to pay Company's reasonable costs and expenses of collection, including attorney's fees, whether or not suit or action is filed and any additional costs, expenses attorneys' fees incurred at trial or on appeal.

See Exhibit A, Contract, Appendix A.

ANSWER:   Plaintiff/counter-defendant admits that this language is contained in the Contract.

11.   On or before May 31, 2007, Midwest, or a third-party on behalf of Midwest, paid ARE the sum of $131,534.50, representing fifty (50) percent of the total purchase price pursuant to the Contract.

ANSWER:   Plaintiff/counter-defendant admits the allegations contained in paragraph 11.

12.   On or about September 25, 2007, ARE sent a letter to Midwest that stated, inter alia, as follows:

> **Plan of attack for installation:**
> Two A.R.E. technicians to be on site when truck arrives, Midwest Custom Case to inspect equipment prior to unloading truck, **remaining payment check handed to service tech, then equipment to be unloaded from truck** and placed into position and assembly process starts and continues until complete for approximately 3 to 4 days and technicians return to St. Marys, PA. (emphasis in original)

See September 25, 2007 letter from ARE to Midwest, a true and correct copy of which is attached hereto as Exhibit B and incorporated herein by reference.

ANSWER:   Plaintiff/counter-defendant admits the allegations contained in paragraph 12.

13.   On or shortly before October 4, 2007, ARE and Midwest agreed as follows:

> OFC Capital Corporation (Lessor) or its assigns and Mark Cladis of Midwest Custom Case (Lessee) will visually inspect the Challenger warm air combustion unit upon arrival and uncrating at its destination of 425 Crossings Dr in University Park, IL scheduled for Tuesday October 9, 2007. It is agreed that once that takes place and once Mr. Cladis gives his verbal approval to release funds, OFC Capital Corporation will remit the remaining balance due ARE, Inc. The funds will be wired or overnighted as outlined in [ARE's] invoice.

5

See e-mail from Davis Kirby, Vice President of Broker Relations, OFC Capital, to Herb Spanier ("Spanier"), of Sunbelt Lessors, Inc., forwarded by Spanier, on or about October 5, 2007, to the e-mail address "jbareinc@alltel.net", a true and correct copy of which is attached hereto as Exhibit C and incorporated herein by reference.

ANSWER:    Plaintiff/counter-defendant admits the allegations contained in paragraph 12.

14. ARE caused the Challenger Unit and Optional Equipment to be transported by a third-party shipper to Midwest's facility in University Park, Illinois and said shipment arrived at said location on October 9, 2007.

ANSWER:    Plaintiff/counter-defendant admits that a shipment was brought to University Park, Illinois on or about October 9, 2007 and lacks sufficient information to admit or deny the remaining allegations contained in paragraph 14 and, therefore, denies same and demands strict proof thereof.

15. On October 9, 2007, ARE had two service technicians on site at Midwest's facility in University Park, Illinois for off loading and setting of all equipment as it arrived.

ANSWER:    Plaintiff/counter-defendant lacks sufficient information to admit or deny the allegations contained in paragraph 15 and, therefore, denies same and demands strict proof thereof.

16. On October 9, 2007, upon arrival of the Challenger Unit and Optional Equipment at Midwest's facility in University Park, Illinois, ARE uncrated the Challenger Unit and Optional Equipment to permit visual inspection by Midwest.

ANSWER:    Plaintiff/counter-defendant denies the allegations contained in paragraph 16.

17. On October 9, 2007, upon arrival of the Challenger Unit and Optional Equipment at Midwest's facility in University Park, IL, and upon ARE uncrating the Challenger Unit and Optional Equipment for visual inspection by Midwest, Midwest failed and refused to visually inspect the Challenger Unit and Optional Equipment.

ANSWER: Plaintiff/counter-defendant denies the allegations contained in paragraph 17.

18. On October 9, 2007, upon arrival of the Challenger Unit and Optional Equipment at Midwest's facility in University Park, Illinois, and upon ARE uncrating the Challenger Unit and Optional Equipment for visual inspection by Midwest, Midwest wrongfully stated to ARE that Midwest would not pay or approve payment of the balance of the purchase price for the Challenger Unit and the Optional Equipment until (1) the Challenger Unit and Optional Equipment were fully installed; (2) Midwest completed construction of the building as required and site preparations required for installation of the Challenger Unit and Optional Equipment, including electrical work; and (3) ARE returned for start up of the Challenger Unit and Operational Equipment.

ANSWER: Plaintiff/counter-defendant denies the allegations contained in paragraph 18.

19. On October 10, 2007, ARE caused the third-party shipper to return with the Challenger Unit and Optional Equipment to Midwest's facility in University Park, IL for visual inspection of the Challenger Unit and Optional Equipment by Midwest and delivery of the Challenger Unit and Optional Equipment to Midwest.

ANSWER: Plaintiff/counter-defendant denies the allegations contained in paragraph 19.

7

20. On October 10, 2007, Midwest again failed and refused to visually inspect the Challenger Unit and Optional Equipment at its facility in University Park, Illinois.

ANSWER: Plaintiff/counter-defendant denies the allegations contained in paragraph 20.

21. On October 10, 2007, Midwest again wrongfully failed and refused to pay or approve payment of the balance of the purchase price for the Challenger Unit and the Optional Equipment.

ANSWER: Plaintiff/counter-defendant denies the allegations contained in paragraph 21.

22. ARE has performed all of its obligations entitling ARE to payment of the balance of $131,534.50 pursuant to the Contract, and has satisfied all conditions not otherwise excused to said payment.

ANSWER: Plaintiff/counter-defendant denies the allegations contained in paragraph 22.

23. At all relevant times, ARE was, and is, ready, willing and able to perform its remaining obligations pursuant to the Contract, but for Midwest's breach of and anticipatory repudiation of the Contract.

ANSWER: Plaintiff/counter-defendant denies the allegations contained in paragraph 23.

24. By its conduct alleged herein, Midwest has breached its payment obligation pursuant to the Contract and has breached the Contract by its anticipatory repudiation of the Contract.

ANSWER: Plaintiff/counter-defendant denies the allegations contained in paragraph 24.

25. As a direct and proximate result of Midwest's breach of and anticipatory repudiation of the Contract, ARE has suffered, and will continue to suffer, damages, including, but not limited to, the following:

(A) ARE's costs to manufacture the Challenger Unit and Optional Equipment;

(B) Fees to store the Challenger Unit and Optional Equipment upon their unanticipated return from Illinois;

(C) Shipping costs to transport the Challenger Unit and Optional Equipment back from Illinois;

(D) Expenses associated with the staff that ARE sent to Illinois to assemble and hook-up the equipment once off-loaded from the delivery trucks, which staff spent two days in Illinois waiting for Midwest to visually inspect the Challenger Unit and Optional Equipment, only to ultimately return without having hooked up the equipment;

(E) Interest accumulating on the unpaid balance of the purchase price of $131,534.50;

(F) Legal fees incurred as a result of having to defend and prosecute this action; and

    (G)    The remaining payment which is required under the contract in the amount of $131,534.50.

ANSWER:    Plaintiff/counter-defendant denies the allegations contained in paragraph 25, including subparagraphs (A) through (G).

## Count I: Breach of Contract

26.    ARE incorporates paragraphs 1-25 of its Counterclaims as if fully set forth in Count I of its Counterclaims.

ANSWER:    Plaintiff/counter-defendant restates and realleges its answers to paragraphs 1 through 25 as though fully set forth herein.

27.    The Contract is a valid and enforceable agreement between ARE and Midwest.

ANSWER:    Plaintiff/counter-defendant admits only the validity and enforceability of the contract to the extent it so arises by operation of law and denies the remaining allegations contained in paragraph 27..

28.    As set forth above, ARE has performed all of its obligations entitling ARE to payment of the balance of $131,534.50 pursuant to the Contract, and has satisfied all conditions not otherwise excused to said payment.

ANSWER:    Plaintiff/counter-defendant denies the allegations contained in paragraph 28.

29.    At all relevant times, ARE was, and is, ready, willing and able to perform its remaining obligations pursuant to the Contract, but for Midwest's breach of and anticipatory repudiation of the Contract.

ANSWER:    Plaintiff/counter-defendant denies the allegations contained in paragraph 29.

30. As set forth above, Midwest has breached its payment obligation pursuant to the Contract and has breached the Contract by its anticipatory repudiation of the Contract.

ANSWER: Plaintiff/counter-defendant denies the allegations contained in paragraph 30.

31. As set forth above, as a direct and proximate result of Midwest's breach of and anticipatory repudiation of the Contract, ARE has suffered, and will continue to suffer, damages.

ANSWER: Plaintiff denies the allegations contained in paragraph 31.

WHEREFORE, plaintiff/counter-defendant, MIDWEST CUSTOM CASE, INC., denies that the defendant/counter-plaintiff is entitled to a judgment against it for a sum in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000) plus costs of suit, or for any amount whatsoever, and prays that judgment be entered in favor of the plaintiff/counter-defendant and against the defendant/counter-plaintiff and for such further relief as deemed just and appropriate by this Honorable Court.

### Count II: Specific Performance

26. ARE incorporates paragraphs 1-25 of its Counterclaims as if fully set forth in Count II of its Counterclaims.

ANSWER: Plaintiff restates and realleges its answers to paragraphs 1 through 25 as though fully set forth herein.

27. Midwest has failed and refused to perform the terms of the Contract by not paying and/or approving payment in the amount of $131,534.50.

ANSWER: Plaintiff denies the allegations contained in paragraph 27.

11

28.     ARE remains ready, willing and able to perform its remaining obligations pursuant to the Contract, but for Midwest's breach of and anticipatory repudiation of the Contract.

ANSWER:     Plaintiff denies the allegations contained in paragraph 28.

WHEREFORE, plaintiff/counter-defendant, MIDWEST CUSTOM CASE, INC., denies that the defendant/counter-plaintiff is entitled to a judgment against it or for specific performance of the contract in its favor and prays that judgment be entered in favor of the plaintiff/counter-defendant and against the defendant/counter-plaintiff and for such further relief as deemed just and appropriate by this Honorable Court.

## SPECIAL DEFENSES

The plaintiff/counter-defendant, MIDWEST CUSTOM CASE, INC., by its attorneys, THE HUNT LAW GROUP, LLC, states the following special defenses to the defendant/counter-plaintiff's Counterclaim:

### First Special Defense – Waiver

1.      ARE's failure and refusal to allow Midwest to visually inspect the Challenger Unit and Optional Equipment upon their arrival at Midwest's facility in University Park, Illinois on October 9, 2007 and/or again on October 10, 2007 constitutes a waiver of ARE's right to payment of the outstanding balance.

2.      Thus, on or about October 9, 2007, (1) Midwest had performed all of its obligations pursuant to the Contract that entitled Midwest to visually inspect the Challenger Unit and Optional Equipment prior to payment of the sum of $131,534.50, which amount was the

balance due pursuant to the Contract (from or on behalf of Midwest), and (2) all conditions for said visual inspection had been satisfied or otherwise excused. Accordingly, ARE's failure and refusal to allow Midwest to visually inspect the Challenger Unit and Optional Equipment waived Midwest's obligation pay or approve payment to ARE in the amount of $131,534.50 on said date(s) and constituted a material breach of the Contract by ARE.

WHEREFORE, the plaintiff/counter-defendant, MIDWEST CUSTOM CASE, INC., by its attorneys, prays that, as for the defendant/counter-plaintiff's Counterclaim, judgment be entered in favor of the plaintiff/counter-defendant and against the defendant/counter-plaintiff on all pleadings. The defendant further prays for any other relief this Court deems just.

### Second Special Defense – Estoppel

1. Based upon ARE's failure and refusal to allow Midwest to visually inspect the Challenger Unit and Optional Equipment upon their arrival at Midwest's facility in University Park, Illinois on October 9, 2007, ARE is estopped and/or is equitably estopped from asserting its right to payment of the sum of $131,534.50, which amount was the balance due pursuant to the Contract.

2. Thus, on or about October 9, 2007, (1) Midwest had performed all of its obligations pursuant to the Contract that entitled Midwest to visually inspect the Challenger Unit and Optional Equipment prior to payment of the sum of $131,534.50, which amount was the balance due pursuant to the Contract (from or on behalf of Midwest), and (2) all conditions for said visual inspection had been satisfied or otherwise excused. Accordingly, ARE's failure and refusal to allow Midwest to visually inspect the Challenger Unit and Optional Equipment

estoppes ARE from claiming payment of the remaining balance to ARE in the amount of $131,534.50 on said date(s) and constituted a material breach of the Contract by ARE.

WHEREFORE, the plaintiff/counter-defendant, MIDWEST CUSTOM CASE, INC., by its attorneys, prays that, as for the defendant/counter-plaintiff's Counterclaim, judgment be entered in favor of the plaintiff/counter-defendant and against the defendant/counter-plaintiff on all pleadings. The defendant further prays for any other relief this Court deems just.

### Third Special Defense – Anticipatory Repudiation

1. ARE's statements to Midwest on October 9, 2007, that ARE would not allow Midwest to inspect the Challenger Unit and Optional Equipment until after Midwest had remitted and/or approved payment of the balance of the purchase price for the Challenger Unit and the Optional Equipment in the sum of $131,534.50, constitutes an anticipatory repudiation of the Contract.

WHEREFORE, the plaintiff/counter-defendant, MIDWEST CUSTOM CASE, INC., by its attorneys, prays that, as for the defendant/counter-plaintiff's Counterclaim, judgment be entered in favor of the plaintiff/counter-defendant and against the defendant/counter-plaintiff on all pleadings. The defendant further prays for any other relief this Court deems just.

Respectfully submitted,

THE HUNT LAW GROUP, LLC

By: /s/ Brian J. Hunt
　　Brian J. Hunt
　　ID Number 6208397

Brian J. Hunt
Ajay I. Patel
THE HUNT LAW GROUP, LLC
Attorneys for Plaintiff
225 West Washington, 18th Floor
Chicago, Illinois 60606
(312) 384-2300

## CERTIFICATE OF SERVICE

I certify, under penalty of perjury that I accomplished service pursuant to ECF as to Filing Users and pursuant to LR 5.5 for all parties that are not Filing Users on the 21st day of April 2008, before 5:00 p.m.

/s/ Ajay I. Patel
AJAY I. PATEL