30144/aip

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MIDWEST CUSTOM CASE, INC. ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 08 CV 844 |
| ) | |
| ADVANCED RECYCLING EQUIPMENT, ) | Honorable Charles R. Norgle, Sr. |
| INC. ) | Magistrate Judge Cole |
| ) | |
| Defendant. ) | |

## PLAINTIFF'S ANSWER TO AFFIRMATIVE DEFENSES

### Facts

1.  On or about February 7, 2007, Advanced Recycle Equipment, Inc. ("ARE") and Midwest Custom Case, Inc. ("Midwest") entered into a certain contract (the "Contract") which provided, inter alia, that ARE would sell certain goods, and provide certain services, to Midwest, in return for certain payments by Midwest, as follows (and as set forth more fully in the Contract):

> Challenger CCU405-A "Warm Air" Combustion Unit including Heat Exchanger, Ash Removal System, Standard Controls and Single Skin Chimney (24' long) (collectively, the "Challenger Unit"): $176,351.00
>
> Optional Equipment:
> Double Damper Assembly w/ Motorized Control: $4,798.00
> Assembly/Installation of all equipment Supplied by A.R.E.: $10,000.00
> Shipping: $4,095.00
> Auto De-Ash w/ Controls & Bin: $11,625.00
> 50 Cubic Yard Live Bottom Storage including Transfer Auger: $56,200.00
> * Start-up, Commissioning and Training are included in this package

See Contract, a true and correct copy of which is attached hereto as Exhibit A and incorporated herein by reference.

ANSWER:   Plaintiff admits the allegations contained in paragraph 1.

2.   The Contract expressly provided that certain items were excluded from the scope of the Contract, including, inter alia, construction of a building to house the Challenger Unit and Optional Equipment and electrical service necessary to operate the Challenger Unit and Optional Equipment, as follows:

> **The following scope of supply is excluded from this proposal:**
>
> \*   Building as required and site preparations required for installation, including all foundation work, electrical, plumbing, etc.

See Exhibit A, Contract at 3.

ANSWER:   Plaintiff admits the language contained in the Contract and denies the remaining allegations contained in paragraph 2.

3.   The Contract set forth certain terms and conditions of the sale, including, inter alia, the following:

> Title to the property furnished by Advanced Recycling Equipment is retained until paid in full.\*\*\*  This agreement shall be construed under the laws of the Commonwealth of Pennsylvania.  Signing this contract verifies that you agree to the Terms and Conditions of Sale in the attached Appendix A.

See Exhibit A, Contract at 3.

ANSWER:   Plaintiff admits that this language is contained in the Contract and denies the remaining allegations contained in paragraph 3.

4.   The Contract set forth the applicable freight arrangements, as follows:

> All equipment sales will be **FOB University Park, IL.** (emphasis in original)

See Exhibit A, Contract at 3.

2

ANSWER:   Plaintiff admits that this language is contained in the Contract.

5.   The Contract set forth certain terms, as follows:

> 50% Due with Purchase, Balance Due upon equipment arrival to University Park, IL and verbal approval of customer to Balboa Capital. Upon customer request Advanced Recycling Equipment will have two service technicians on site for off loading and setting of all equipment as it arrives. Advanced Recycle Equipment, Inc. agrees that installation including start-up and commissioning of the system will be provided in a timely manner.

See Exhibit A, Contract at 4.

ANSWER:   Plaintiff admits that this language is contained in the Contract.

6.   Appendix A set forth certain additional terms and conditions of the sale, including, inter alia, with respect to title and insurance, as follows:

> **TITLE AND INSURANCE** – Title to the product(s) and risk of loss or damage shall pass to Purchaser at the f.o.b. point, except that a security interest in the product(s) and proceeds and any replacement shall remain in Company, regardless of the mode of attachment to realty or other property, until the full price has been paid in cash.

See Exhibit A, Contract at 4.

ANSWER:   Plaintiff admits that this language is contained in the Contract.

7.   Appendix A set forth certain additional terms and conditions of the sale, including, inter alia, with respect to attorneys' fees and costs, as follows:

> In the event Company places this agreement in the hands of an attorney for collection of the purchase price or other sums owing to Company from Purchaser or whoever holds title to equipment purchased, Purchaser agrees to pay Company's reasonable costs and expenses of collection, including attorney's fees, whether or not suit [sic] or action is filed and any additional costs, expenses attorneys' fees incurred at trial or on appeal.

3

See Exhibit A, Contract, Appendix A.

ANSWER:   Plaintiff admits that this language is contained in the Contract and denies the remaining allegations contained in paragraph 7..

8.   On or before May 31, 2007, Midwest, or a third-party on behalf of Midwest, paid ARE the sum of $131,534.50, representing fifty (50) percent of the total purchase price pursuant to the Contract.

ANSWER:   Defendant admits the allegations contained in paragraph 8.

9.   On or about September 25, 2007, ARE sent a letter to Midwest that stated, inter alia, as follows:

> **Plan of attack for installation:**
> Two A.R.E. technicians to be on site when truck arrives, Midwest Custom Case to inspect equipment prior to unloading truck, **remaining payment check handed to service tech, then equipment to be unloaded from truck** and placed into position and assembly process starts and continues until complete for approximately 3 to 4 days and technicians return to St. Marys, PA. (emphasis in original)

See September 25, 2007 letter from ARE to Midwest, a true and correct copy of which is attached hereto as Exhibit B and incorporated herein by reference.

ANSWER:   Plaintiff admits the allegations contained in paragraph 9.

10.   On or shortly before October 4, 2007, ARE and Midwest agreed as follows:

> OFC Capital Corporation (Lessor) or its assigns and Mark Cladis of Midwest Custom Case (Lessee) will visually inspect the Challenger warm air combustion unit upon arrival and uncrating at its destination of 425 Crossings Dr in University Park, IL scheduled for Tuesday October 9, 2007.  It is agreed that once that takes place and once Mr. Cladis gives his verbal approval to release funds, OFC Capital Corporation will remit the remaining balance due ARE, Inc.  The funds will be wired or overnighted as outlined in [ARE's] invoice.

4

See e-mail from Davis Kirby, Vice President of Broker Relations, OFC Capital, to Herb Spanier ("Spanier"), of Sunbelt Lessors, Inc., forwarded by Spanier, on or about October 5, 2007, to the e-mail address "jbareinc@alltel.net", a true and correct copy of which is attached hereto as Exhibit C and incorporated herein by reference.

ANSWER:   Plaintiff admits the allegations contained in Paragraph 10.

11.   ARE caused the Challenger Unit and Optional Equipment to be transported by a third-party shipper to Midwest's facility in University Park, Illinois and said shipment arrived at said location on October 9, 2007.

ANSWER:   Plaintiff admits that a shipment was brought to University Park, Illinois on or about October 9, 2007 and lacks sufficient information to admit or deny the remaining allegations contained in paragraph 14 and, therefore, denies same and demands strict proof thereof..

12.   On October 9, 2007, ARE had two service technicians on site at Midwest's facility in University Park, Illinois for off loading and setting of all equipment as it arrived.

ANSWER:   Plaintiff lacks sufficient information to admit or deny the allegations contained in paragraph 12 and, therefore, denies same and demands strict proof thereof.

13.   On October 9, 2007, upon arrival of the Challenger Unit and Optional Equipment at Midwest's facility in University Park, Illinois, ARE uncrated the Challenger Unit and Optional Equipment to permit visual inspection by Midwest.

ANSWER:   Plaintiff denies the allegations contained in paragraph 13.

14.   On October 9, 2007, upon arrival of the Challenger Unit and Optional Equipment at Midwest's facility in University Park, IL, and upon ARE uncrating the Challenger Unit and

Optional Equipment for visual inspection by Midwest, Midwest failed and refused to visually inspect the Challenger Unit and Optional Equipment.

ANSWER:   Plaintiff denies the allegations contained in paragraph 14.

15.   On October 9, 2007, upon arrival of the Challenger Unit and Optional Equipment at Midwest's facility in University Park, Illinois, and upon ARE uncrating the Challenger Unit and Optional Equipment for visual inspection by Midwest, Midwest wrongfully stated to ARE that Midwest would not pay or approve payment of the balance of the purchase price for the Challenger Unit and the Optional Equipment until (1) the Challenger Unit and Optional Equipment were fully installed; (2) Midwest completed construction of the building as required and site preparations required for installation of the Challenger Unit and Optional Equipment, including electrical work; and (3) ARE returned for start up of the Challenger Unit and Operational Equipment.

ANSWER:   Plaintiff denies the allegations contained in paragraph 15.

16.   On October 10, 2007, ARE caused the third-party shipper to return with the Challenger Unit and Optional Equipment to Midwest's facility in University Park, IL for visual inspection of the Challenger Unit and Optional Equipment by Midwest and delivery of the Challenger Unit and Optional Equipment to Midwest.

ANSWER:   Plaintiff denies the allegations contained in paragraph 16.

17. On October 10, 2007, Midwest again failed and refused to visually inspect the Challenger Unit and Optional Equipment at its facility in University Park, Illinois.

ANSWER: Plaintiff denies the allegations contained in paragraph 17.

18. On October 10, 2007, Midwest again wrongfully failed and refused to pay or approve payment of the balance of the purchase price for the Challenger Unit and the Optional Equipment.

ANSWER: Plaintiff denies the allegations contained in paragraph 18.

### First Affirmative Defense – Waiver

19. ARE incorporates paragraphs 1-18 of its Affirmative Defenses as if fully set forth herein.

ANSWER: Plaintiff restates and re-alleges its answers to paragraphs 1 through 18 as though fully set forth herein.

20. Midwest's failure and refusal to visually inspect the Challenger Unit and Optional Equipment upon their arrival and uncrating at Midwest's facility in University Park, Illinois on October 9, 2007 and/or again on October 10, 2007 constitutes a waiver of Midwest's right to visually inspect the Challenger Unit and Optional Equipment upon their arrival and uncrating at Midwest's facility at University Park, Illinois.

ANSWER: Plaintiff denies the allegations contained in paragraph 20.

21. Thus, as of October 9, 2007 and/or October 10, 2007, (1) ARE had performed all of its obligations pursuant to the Contract that entitled ARE to payment of the sum of $131,534.50, which amount was the balance due pursuant to the Contract (from or on behalf of Midwest), and (2) all conditions for said payment had been satisfied or otherwise excused. Accordingly, Midwest's failure and refusal to pay or approve payment to ARE in the amount of $131,534.50 on said date(s) constitutes a material breach of the Contract by Midwest.

ANSWER:   Plaintiff denies the allegations contained in paragraph 21.

### Second Affirmative Defense – Estoppel

19. ARE incorporates paragraphs 1-18 of its Affirmative Defenses as if fully set forth herein.

ANSWER:   Plaintiff restates and re-alleges its answers to paragraphs 1 through 18 as though fully set forth herein.

20. Based upon Midwest's failure and refusal to visually inspect the Challenger Unit and Optional Equipment upon their arrival and uncrating at Midwest's facility in University Park, Illinois on October 9, 2007 and/or again on October 10, 2007, Midwest is estopped and/or is equitably estopped from asserting its right to visually inspect the Challenger Unit and Optional Equipment upon their arrival and uncrating at Midwest's facility at University Park, Illinois as a condition of Midwest's obligation to pay and/or to approve payment to ARE of the sum of $131,534.50, which amount was the balance due pursuant to the Contract.

ANSWER:   Plaintiff denies the allegations contained in paragraph 20.

8

21.    Thus, as of October 9, 2007 and/or October 10, 2007, (1) ARE had performed all of its obligations pursuant to the Contract that entitled ARE to payment of the sum of $131,534.50, which amount was the balance due pursuant to the Contract (from or on behalf of Midwest), and (2) all conditions for said payment had been satisfied or otherwise excused. Accordingly, Midwest's failure and refusal to pay and/or approve payment to ARE in the amount of $131,534.50 on said date(s) constitutes a material breach of the Contract by Midwest.

ANSWER:    Plaintiff denies the allegations contained in paragraph 21.

### Third Affirmative Defense – Anticipatory Repudiation

19.    ARE incorporates paragraphs 1-18 of its Affirmative Defenses as if fully set forth herein.

ANSWER:    Plaintiff restates and re-alleges its answers to paragraphs 1 through 18 as though fully set forth herein.

20.    Midwest's statements to ARE on October 9, 2007, that Midwest would not pay and/or approve payment of the balance of the purchase price for the Challenger Unit and the Optional Equipment until (1) the Challenger Unit and Optional Equipment were fully installed; (2) Midwest completed construction of the building as required and site preparations required for installation of the Challenger Unit and Optional Equipment, including electrical work; and (3) ARE returned for start up of the Challenger Unit and Operational Equipment – none of which items were conditions of Midwest's obligation to pay and/or to approve payment to ARE of the

sum of $131,534.50, which amount was the balance due pursuant to the Contract – constitutes an anticipatory repudiation of the Contract.

ANSWER:   Plaintiff denies the allegations contained in paragraph 20.

### Forth Affirmative Defense – Failure To State A Cause Of Action In Count III For Unjust Enrichment

19.   ARE incorporates paragraphs 1-18 of its Affirmative Defenses as if fully set forth herein.

ANSWER:   Plaintiff restates and re-alleges its answers to paragraphs 1 through 18 as though fully set forth herein.

20.   The theory of unjust enrichment is an equitable remedy based upon a contract implied in law. As an equitable remedy, unjust enrichment is only available where there is no adequate remedy at law. Otherwise stated, where there is a specific contract that governs the relationship between the parties, the doctrine or unjust enrichment has no application. While a party may plead claims for breach of contract and unjust enrichment in the alternative, a party is barred from asserting a claim for unjust enrichment if said claim includes allegations of an express contract that governs the relationship of the parties.

ANSWER:   Plaintiff denies the allegations contained in paragraph 20.

21.   In Count III, Midwest asserts a claim based upon the theory of unjust enrichment. However, in paragraphs 1 through 29 of Count III, Midwest restates and realleges paragraphs 1 through 29 of its Statement of Jurisdiction and Common Allegations, in which Midwest alleged an express contract (namely, the Contract) that governs the relationship of the parties.

10

ANSWER: Plaintiff denies the allegations contained in paragraph 21.

Respectfully submitted,

THE HUNT LAW GROUP, LLC

By: /s/ Brian J. Hunt
Brian J. Hunt
ID Number 6208397

Brian J. Hunt
Ajay I. Patel
THE HUNT LAW GROUP, LLC
Attorneys for Plaintiff
225 West Washington, 18th Floor
Chicago, Illinois 60606
(312) 384-2300

## CERTIFICATE OF SERVICE

I certify, under penalty of perjury that I accomplished service pursuant to ECF as to Filing Users and pursuant to LR 5.5 for all parties that are not Filing Users on the 21st day of April 2008, before 5:00 p.m.

/s/ Ajay I. Patel
AJAY I. PATEL